SMITH *v.* CITY COMMISSION OF GRAND RAPIDS.

1. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTES FOR THE COURT.
   The proper construction of a statute is for the court.

2. STATUTES—CONSTRUCTION—DUTY OF COURT.
   It is the duty of a court to construe a statute as it is and attempt to carry out the legislative intent.

3. SAME—ASCERTAINMENT OF LEGISLATIVE INTENTION.
   Primarily the legislative intention is to be ascertained from the language of the statute itself but when such language is plain and unambiguous there is no room for construction and the statute must be given effect according to its plain meaning.

4. SAME—DOUBTFUL LANGUAGE—CONSTRUCTION.

Where the language of a statute is of doubtful meaning, the court should give it a reasonable construction looking to the purpose to be subserved thereby, the object sought to be accomplished and its occasion and necessity.

5. SAME—CONSTRUCTION—INTENTION PREVAILS OVER STRICT LETTER.

Such construction should be placed upon a statute as to effect its purpose, the spirit and intention of the statute prevailing over its strict letter.

6. SAME—INJUSTICE—ABSURD CONSEQUENCES.

If a statute is open to construction at all, it will ordinarily be so construed to prevent injustice if possible and to obviate absurd consequences.

7. SAME—WHOLE CONSTRUED TOGETHER—EFFECT GIVEN EVERY PART.

The whole act is to be construed together and every part of it should be given effect if possible.

8. SAME—OTHER ACTS RELATING TO SAME SUBJECT.

Resort may be had to other statutes relating to the same subject as act sought to be construed.

9. SAME—DUTY OF COURT—ASCERTAINMENT OF LEGISLATIVE PURPOSE.

It is the duty of a court in construing a statute to ascertain the purpose of the legislature.

10. SAME—IN PARI MATERIA.

Statutes *in pari materia* should be construed together.

11. SAME—MANDATORY AND DIRECTORY ACTS.

Whether a statute is mandatory or directory depends on whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form.

12. SAME—MANDATORY ACTS.

Statutes which affect the public interest or claims *de jure* of third persons, promote the ends of justice, confer a new right, privilege or immunity, and prescribe the mode for the acquisition, preservation, enforcement, or enjoyment thereof, are mandatory.

13. SAME—PUBLIC BODIES OR OFFICERS—MANDATORY ACTS.

Statutes which confer upon a public body or officer power to act for the sake of justice, or which clothe a public body or officer with power to perform acts which concern the public interests or the rights of individuals, are generally regarded as mandatory, although the language is permissive merely, since they

are construed as imposing duties rather than conferring privileges.

14. SAME—PUBLIC INTERESTS—MANDATORY ACTS.

A mandatory construction will usually be given to the word ''may'' where public interests are concerned, and the public or third persons have a claim *de jure* that the power conferred should be exercised, or whenever something is directed to be done for the sake of justice or the public good; but never for the purpose of creating a right.

15. TAXATION—REFUND OF SPECIAL ASSESSMENTS—TRUNKLINE HIGHWAYS—MUNICIPAL CORPORATIONS—STATUTES—PRIORITY OF USE OF CERTAIN REVENUE.

Under statutes providing for imposition of entire cost of constructing, improving and maintaining trunkline highways upon the State and for division of certain portions of gasoline and motor vehicle weight taxes, so-called, between cities and villages and providing that ''such sums so paid to such incorporated cities and villages shall be used by them, respectively, for the following purposes and in the following order of priority,'' petitioners *held*, entitled to refund, without interest, of special assessments levied for trunkline highway purposes within their city when, as and if money comes into hands of city and is not expended for purposes enumerated in preceding subdivisions of statutes and in precedence of use for improvement, repair or maintenance of streets and highways or construction and maintenance of bridges or grade separations, or general street or highway purposes pursuant to a subsequent subdivision (1 Comp. Laws 1929, § 3594, as last amended by Act No. 8, Pub. Acts 1934 [1st Ex. Sess.]; § 4425 and § 4651, as last amended by Act No. 7, Pub. Acts 1934 [1st Ex. Sess.]; Act No. 107, Pub. Acts 1933).

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted June 9, 1937. (Docket No. 45, Calendar No. 39,539.) Decided September 1, 1937. Rehearing denied October 13, 1937. Reconsideration of denial of rehearing denied December 29, 1937.

Petition by Henry Smith, Thomas E. Graham and Annie Graham addressed to the City Commission of the City of Grand Rapids praying for the payment by the city to petitioners of amounts paid by peti-

tioners under special assessments. From denial of petition, petitioners appealed to the Superior Court of Grand Rapids. Plaintiffs review dismissal of appeal by appeal in the nature of certiorari. Reversed and remanded for further proceedings.

*Fred P. Geib, Cornelius Hoffius* and *Linsey, Shivel, Phelps & Vander Wal,* for plaintiffs.

*Ganson Taggart,* for defendant.

*A. Edward Brown,* St. Joseph City Attorney, *James H. Lee,* Principal Assistant Corporation Counsel of Detroit, and *William A. Ewart,* Pontiac City Attorney, *amici curiæ,* on application for rehearing.

POTTER, J. Plaintiffs, owners of land in the westerly part of the city of Grand Rapids, claiming they were entitled to refund of a special assessment levied against their property to defray the cost and expense of the construction of State trunkline highway M–50 which passed by or through their premises, petitioned the city commission of Grand Rapids therefor. The city commission refused to allow such refund to plaintiffs, who appealed from the action of the city commission to the superior court of Grand Rapids, which court refused plaintiffs relief. ''No appeal shall be allowed from the decision of said court.'' 1 Comp. Laws 1929, § 3594, subd. 5 (d), as last amended by Act No. 8, Pub. Acts 1934 (1st Ex. Sess.). Plaintiffs bring certiorari from the order of the superior court of Grand Rapids to this court.

Act No. 17, Pub. Acts 1925 (1 Comp. Laws 1929, § 4425), provides:

''On and after the first day of January, A. D. nineteen hundred twenty-six, the cost of construct-

ing, improving and maintaining trunkline highways shall be met entirely by the State."

"The important change effected by the 1925 act was that the entire cost of constructing, improving, and maintaining trunkline highways was placed upon the State, thereby relieving the counties and townships of the portion of such cost imposed upon them by the 1919 act." *Johnson* v. *Ontonagon Board of County Road Commissioners,* 253 Mich. 465, 467.

Plaintiffs base their claim upon 1 Comp. Laws 1929, § 3594, subd. 5 (d), as last amended by Act No. 8, Pub. Acts 1934 (1st Ex. Sess.), and 1 Comp. Laws 1929, § 4651, subd. 5 (d), as last amended by Act No. 7, Pub. Acts 1934 (1st Ex. Sess.). The language of these sections is identical, section 3594 relating to the distribution of funds derived from the gasoline tax, so-called, and section 4651 relating to the distribution of the moneys derived from the weight tax, so-called.

The determination of the question involved depends upon the construction of the statutes above quoted. There is no question that plaintiffs' property abuts State trunkline highway M–50, in the city of Grand Rapids, that such property was assessed for the construction of such highway. The only question is whether plaintiffs are entitled to a refund under these provisions of the statutes. The question involved has not been directly passed upon by this court, though in *City of Grand Rapids* v. *Iosco Land Co.,* 273 Mich. 613 (105 A. L. R. 695), it is said:

"The obvious purpose of Act No. 107, Pub. Acts 1933, was to make it possible to secure relief to taxpayers through the use of weight and gasoline tax collections for the payment or refund of special assessments levied for the construction of highways."

It is true in that case the court said "The statute established the right to the refund in the grantor." But the question in controversy there was between a grantor and grantee as to the right to a refund which had been made by the city.

The gist of appellants' contention is that the statute is to be construed as mandatory upon the city commission instead of directory,—and the essence of defendant's contention is that the statute is to be construed as vesting discretionary power in the city commission.

The proper construction of a statute is for the court. *Albert* v. *Gibson,* 141 Mich. 698. The object of statutory construction is to discover the legislative intent. *People* v. *Marxhausen,* 204 Mich. 559 (3 A. L. R. 1505); *Miles, ex rel. Kamferbeek,* v. *Fortney,* 223 Mich. 552; *Gwitt* v. *Foss,* 230 Mich. 8; *People* v. *Gould,* 237 Mich. 156. In construing a statute, it is the duty of the court to construe it as it is, *Ellis* v. *Boer,* 150 Mich. 452, and to attempt to carry out the intention of the legislature, *Attorney General, ex rel. Owen,* v. *Joyce,* 233 Mich. 619. Primarily, the legislative intention is to be ascertained from the language of the act itself. *Bidwell* v. *Whitaker,* 1 Mich. 469; *Ellis* v. *Boer, supra.* When the language of a statute is plain and unambiguous, there is no room for construction, *City of Detroit* v. *Township of Redford,* 253 Mich. 453; but the statute must be given effect according to its plain meaning. *Barstow* v. *Smith,* Walk. Ch. (Mich.) 394; *People* v. *Lowell,* 250 Mich. 349; *MacQueen* v. *Port Huron City Commission,* 194 Mich. 328; *Crary* v. *Marquette Circuit Judge,* 197 Mich. 452. Where, however, the language of a statute is of doubtful meaning, the court should give it a reasonable construction looking to the purpose to be subserved thereby, *Attorney*

*General* v. *Bank of Michigan,* Harr. Ch. (Mich.) 315;
*Bennett* v. *Michigan Pulpwood Co.,* 181 Mich. 33, and
the object sought to be accomplished, *In re Estate of
Ticknor,* 13 Mich. 44, and its occasion and necessity,
*Bennett* v. *Michigan Pulpwood Co., supra; Sibley* v.
*Smith,* 2 Mich. 486. Such construction should be
placed upon the statute as to effect its purpose.
*People* v. *Stickle,* 156 Mich. 557. The spirit and in-
tention of the statute should prevail over its strict
letter. *Stambaugh Township* v. *Iron County Treas-
urer,* 153 Mich. 104. Ordinarily, if a statute is open
to construction at all, it will be so construed if pos-
sible as to prevent injustice, *Attorney General, ex
rel. Common Council of the City of Detroit,* v. *Marx,*
203 Mich. 331, and obviate absurd consequences,
*Attorney General* v. *Railway,* 210 Mich. 227. The
whole act is to be construed together, *Attorney Gen-
eral* v. *Bank of Michigan, supra; People* v. *Railway,*
228 Mich. 596; and every part of it should be given
effect if possible, *City of Grand Rapids* v. *Crocker,*
219 Mich. 178; *People* v. *Burns,* 5 Mich. 114; *Attor-
ney General, ex rel. McKay,* v. *Detroit & Erin Plank
Road Co.,* 2 Mich. 138. Resort may be had to other
statutes relating to the same subject. *Miles, ex rel.
Kamferbeek,* v. *Fortney, supra; In re Kreiner,* 156
Mich. 296. It is, of course, the duty of the court to
ascertain the purpose of the legislature, *C. N. Ray
Corp.* v. *Secretary of State,* 241 Mich. 457; *Miles,
ex rel. Kamferbeek,* v. *Fortney, supra,* and statutes
*in pari materia* should be construed together, *Board
of Control of the Michigan State Prison* v. *Auditor
General,* 197 Mich. 377.

"Whether a statute is mandatory or directory de-
pends on whether the thing directed to be done is of
the essence of the thing required, or is a mere matter

of form. Accordingly, when a particular provision
of a statute relates to some immaterial matter, as to
which compliance with the statute is a matter of con-
venience rather than substance, or where the direc-
tions of a statute are given merely with a view to the
proper, orderly, and prompt conduct of business, it is
generally regarded as directory, unless followed by
words of absolute prohibition; and the same is true
where no substantial rights depend on the statute,
no injury can result from ignoring it, and the pur-
pose of the legislature can be accomplished in a man-
ner other than that prescribed, with substantially the
same results. But a provision relating to the essence
of the thing to be done, that is, to matters of sub-
stance, is mandatory, and when a fair interpretation
of a statute, which directs acts or proceedings to be
done in a certain way, shows that the legislature in-
tended a compliance with such provision to be essen-
tial to the validity of the act or proceeding, or when
some antecedent and prerequisite conditions must
exist prior to the exercise of power, or must be per-
formed before certain other powers can be exercised,
then the statute must be regarded as mandatory.''
59 C. J. pp. 1074, 1075.

''Other statements of the rules for determining
the legislative intent are that statutes which affect
the public interest or claims *de jure* of third persons,
or promote the ends of justice, or confer a new right,
privilege, or immunity, and prescribe the mode for
the acquisition, preservation, enforcement, or enjoy-
ment thereof, are mandatory.'' 59 C. J. p. 1075.

''Statutes which confer upon a public body or offi-
cer power to act for the sake of justice, or which
clothe a public body or officer with power to perform
acts which concern the public interests or the rights
of individuals, are generally regarded as mandatory,
although the language is permissive merely, since

they are construed as imposing duties rather than conferring privileges.'' 59 C. J. pp. 1076, 1077.

''A mandatory construction will usually be given to the word 'may' where public interests are concerned, and the public or third persons have a claim *de jure* that the power conferred should be exercised, or whenever something is directed to be done for the sake of justice or the public good; but never for the purpose of creating a right.'' 59 C. J. pp. 1082–1085.

These principles have frequently been recognized by this court. *Freud* v. *Wayne Circuit Judge,* 131 Mich. 606; *Rich* v. *Board of State Canvassers,* 100 Mich. 453; *McBrian* v. *City of Grand Rapids,* 56 Mich. 95. In *McBrian* v. *City of Grand Rapids, supra,* the statute provided the board of public works, in constructing sewers, should advertise for sealed proposals to execute the work according to the plans and specifications adopted by the board and ''may'' contract with the lowest responsible bidder. This court said:

''In construing this section, with reference to contracting with the lowest responsible bidder, the word 'may' must be construed as if it meant *shall.* What the board is required to do is for the benefit of the public; the object being to invite competition, and prevent favoritism and fraud in awarding contracts for public works. It was not the intention of the legislature to leave it discretionary with the board whether the contract should be made with the lowest responsible bidder.''

In *State, ex rel. McDill,* v. *Board of State Canvassers,* 36 Wis. 498, the statute stated that the election board ''may'' dispatch a messenger to the inspectors who made the returns, commanding them to complete the returns in the manner specified by

law. This court quoted with approval from that case in *Rich* v. *Board of State Canvassers, supra,* and said:

" 'It is not necessary that a person should be a lawyer in order to know that the word "may," as first used in the statute above quoted, means "must." Any one would so read it who has sufficient intelligence to comprehend that the preservation of our system of free government is impossible unless the will of the people, lawfully expressed through the ballot-box, is respected and obeyed.'

"We think it is altogether clear that there was a plain neglect of duty in failing to send a messenger for corrected returns."

"When a statute confers a power upon a corporation, to be exercised for the public good, the exercise of such power is commonly held to be not merely discretionary, but mandatory." *Motorcoach Operators Ass'n* v. *Detroit Street Railway Commissioners,* 267 Mich. 568.

Applying the principles above stated to the construction of the statutes in question, of which the disputed portion is above quoted, we find the statute provides:

"Such sums so paid to such incorporated cities and villages shall be used by them, respectively, for the following purposes and in the following order of priority."

As applied to the city of Grand Rapids, such money should be applied as follows: (1) The payment of its share of trunkline and Federal aid road maintenance costs; (2) the payment of its obligations on highway projects undertaken by it jointly with the State highway commissioner, under the provisions of, by contract or agreements authorized by, or approved by Act No. 131, Pub. Acts 1931 (amend-

ing 1 Comp. Laws 1929, § 4418); (3) the payment of bonds, interest on bonds or other obligations (including any sinking fund requirements thereon), issued or incurred by the city or village for the widening, opening or improvement of any street or highway or for bridge or grade separations within such city; (4) the payment or refunding to the taxpayers, without interest, of all or any portion of the special assessment or assessments for the cost of opening, widening or improving any State trunkline highway within any incorporated city or village, which cost was levied as a special assessment or assessments prior to the amendatory act. When such payment or refund shall be determined by the legislative body of the city, the same shall apply in equal *pro rata* benefits to all lands so assessed for such special assessment or assessments; and (5) the improvement, repair or maintenance of streets and highways or the construction and maintenance of bridges or grade separations, or general street or highway purposes.

The statute should not be construed so as to enable the city to divert any part of the funds from the purpose for which they are appropriated, nor to vary the order of priority fixed by the statute. The city may not refuse the payment or refunding to the taxpayers, without interest, of any portion of the special assessment or assessments for the cost of opening, widening or improving any State trunkline highway within the city levied prior to the enactment of Act No. 107, Pub. Acts 1933, nor may it refuse to apply the same in equal *pro rata* benefits to all lands so assessed for special assessment or assessments; nor may it lawfully refuse, in the exercise of its discretion, to pay the sums appropriated by the legislature to be disbursed under section 3594, subd. 5 (d), as amended, and use the moneys for the improvement,

repair or maintenance of streets and highways or the construction and maintenance of bridges or grade separations, or general street or highway purposes. No part of the funds appropriated may be used for the improvement, repair or maintenance of streets and highways or the construction and maintenance of bridges or grade separations, or general street or highway purposes, as specified in section 3594, subd. 5 (e), as amended, until all the payments or refunding to the taxpayers in equal *pro rata* benefits to all lands assessed for special benefits as specified in section 3594, subd. 5 (d), as amended, shall be paid in full.

The city commission, in carrying out and administering the statute and applying the appropriation made by it, must apply the money appropriated and received according to the statute. It may, in its discretion, determine the amount to be paid under section 3594, subd. 5 (d), as amended, if there is not sufficient money which has come to it to pay in full the amounts appropriated. Plaintiffs are entitled to be reimbursed to the full amount of the special assessment made against their lands when, as, and if money comes into the hands of the city under either of the acts in question not required to be paid out by it under section 3594, subd. 5 (a, b, c), as amended, and the city commission has no authority to refuse so to apply the money and set aside and vary the order and priority of payment as fixed by statute.

Judgment of the trial court is reversed and the case remanded for further proceedings in accordance herewith. No costs, a public question being involved.

Fead, C. J., and North, Wiest, Butzel, Bushnell, Sharpe, and Chandler, JJ., concurred.