HARVEY A. HELLER AND MARY A. HELLER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 107648. Promulgated December 9, 1942.

*Roscoe E. Harper, Esq., Richard P. Ryan, Esq., Fenlon Boesche, Esq.,* and *Bradford Williams, Esq.,* for the petitioners.

*E. G. Sievers, Esq.,* and *L. R. Vanberg, Esq.,* for the respondent.

OPINION.

SMITH, *Judge:* This proceeding involves income tax deficiencies as follows:

| | |
|---|---|
| 1937 | $331.26 |
| 1938 | 164.79 |
| 1939 | 270.98 |

The sole question in issue is whether certain oil and gas royalties became worthless, giving rise to a deductible loss, during each of the taxable years. Some of the facts have been stipulated.

Petitioners are husband and wife, residents of the State of Oklahoma. They filed joint income and excess profits tax returns for 1937, 1938, and 1939 with the collector of internal revenue for the district of Oklahoma.

Harvey A. Heller, hereinafter referred to as the petitioner, is engaged in the business of acquiring nonproducing oil and gas royalties, or other mineral interests, for investment purposes. His principal office is at Tulsa, Oklahoma. He keeps his books and makes his returns on the cash basis.

During the years 1937, 1938, and 1939 petitioner charged off on his books and his income tax returns the respective amounts of $3,701.93, $4,254.50, and $1,775.34 representing the cost or adjusted bases of

certain oil and gas royalties which allegedly became worthless in those years.

There were 13 separate royalty interests charged off in 1937, 16 in 1938, and 11 in 1939. They all represented fractional interests of from one-eighth to one sixty-fourth in oil lands located in Oklahoma, Texas, New Mexico, Kansas, and Arkansas. In each instance where petitioner charged off a royalty interest a dry hole had been drilled during the taxable year, either on or near the site of petitioner's royalty, usually down to the lowest known producing formation in that area, and the operator had abandoned the premises.

It is stipulated that the sedimentary series or beds below the formations tested by the dry holes driven in the area of petitioner's royalties have never been tested.

Petitioner has been engaged in the oil and gas business since about 1916. In recent years his activities have consisted principally of purchasing, and sometimes selling, oil and gas royalties. For the most part petitioner purchases nonproducing or speculative royalties in localities where he has learned that a reliable operator is acquiring leases preparatory to drilling a test well, and he follows the "plays" of the operator. When an operator drills a test well on or near petitioner's royalty which comes in dry and abandons operations in that locality, petitioner concludes that his royalty is worthless and charges it off in his books and in his return for that year. Petitioner has followed that policy of charging off worthless royalties consistently for a number of years and most of the charge-offs made for years prior to 1937 were approved by the Commissioner. All of the loss deductions claimed by the petitioner for 1937, 1938, and 1939 were disallowed for the reason, as stated in the deficiency notice, that petitioner had not submitted information showing that the royalties had become condemned during the taxable years and had not relinquished title to the royalties.

The respondent's position in this proceeding, as stated in his brief, is that:

* * * in view of the uncertainty of the absence of oil or gas, a royalty can not be considered absolutely worthless until it has been demonstrated or proved that all reasonable possibilities of obtaining oil or gas production have been exhausted in the known-producing horizons and all sedimentary beds below even though untested which can be reached under the present-day standards of drilling.

The petitioner contends, on the other hand, that an oil and gas royalty becomes worthless and may be deducted as a loss under the provisions of section 23 (e) of the Revenue Acts of 1936 and 1938 when it has been established by test drillings on the property, or in the immediate vicinity, down to the lowest formation known to be productive of oil and gas in that area, that the probability of finding oil

and gas in commercial quantities is too remote to justify further operations, and the royalty interest is worthless and has no sale value among experienced royalty investors and others familiar with the oil and gas business.

This same general question was before the Board in *C. C. Harmon*, 1 T. C. 40. Substantially the same arguments were advanced by both parties as are made in the instant case. We there held that certain oil and gas royalties became worthless and were deductible as losses under section 23 (e) upon proof that dry holes were drilled on or in the immediate vicinity of such royalties during the taxable years, demonstrating the improbability of an oil and gas production in commercial quantities, and that the royalties had thereby lost their sale value in the ordinary channels of trade.

We there said that the test to be applied in determining the worthlessness of oil and gas royalties under section 23 (e) was a practical test, the same as for any other type of property, and that the final determination must depend upon the proven facts in each case. The *Harmon* case, in so far as it involves any legal principle, stands as a disapproval of the respondent's position in this proceeding as set out above.

As we said in *C. C. Harmon, supra*, we think that the worthlessness of an oil and gas royalty, like any other property, is a question of fact which must be determined upon all of the evidence. The statute under which deductions are allowed (section 23) does not permit of any restricted test for this particular type of property.

The evidence in the instant case is that during the year in which each of the royalty interests in question was charged off and claimed as a deduction in petitioner's returns a dry hole down to the established productive level for that area had been drilled on or sufficiently near petitioner's property to demonstrate to experienced oil men that petitioner's royalties would probably never be productive of oil or gas in commercial quantities.

Petitioner conceded at the hearing that one of the royalty interests charged off in 1937, identified as a 61/400 royalty interest in a tract located in Grayson County, Texas, and having a cost or adjusted basis of $377.14, became worthless in 1936 when the first dry hole in the immediate area was drilled, and that the charge-off should have been made in that year.

We think that the evidence of record supports petitioner's contentions, and we find as a fact that all the other royalty interests for which deductions were claimed in petitioner's returns for 1937, 1938, and 1939 became worthless during those respective years and were properly charged off by the petitioner in his returns.

*Decision will be entered under Rule 50.*